(C. D. 1524)

CORO, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 15, 1953)

*John D. Rode* for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Mollie Strum*, special attorney), for the defendant.

Before OLIVER and MOLLISON, Judges

OLIVER, Chief Judge: This case relates to merchandise described on the invoice as "silver Pins corazon." It was assessed with duty at the rate of 80 per centum ad valorem as metal stampings of the kind provided for in paragraph 1527 (d) of the Tariff Act of 1930 which reads as follows:

(d) Stampings, galleries, mesh, and other materials of metal, whether or not set with glass or paste, finished or partly finished, separate or in strips or sheets, suitable for use in the manufacture of any of the foregoing articles in this paragraph, if of gold or platinum, 75 per centum ad valorem; if of other metal or metals, plated or unplated, 80 per centum ad valorem.

To clarify the foregoing assessment, it should be mentioned that paragraph 1527 provides for a myriad of articles, including those set forth in subdivision (c) thereof, as follows:

(c) Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished: * * *.

Plaintiff claims that the merchandise is dutiable at rates equivalent to 55 per centum ad valorem as unfinished jewelry under the provisions of paragraph 1527 (a) (2) of the Tariff Act of 1930, as modified by the trade agreement with Mexico, T. D. 50797, reading as follows:

Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof), of whatever material composed (except jewelry composed wholly or in chief value of gold or platinum, or of which the metal part is wholly or in chief value of gold or platinum):

Valued above 20 cents but not above $5 per dozen pieces * * *

There is an alternative claim for classification of the present merchandise as manufactures of silver, not specially provided for, under paragraph 397. There is nothing in the record or in the brief of counsel in support of that claim. It is unnecessary, therefore, to make any further reference thereto.

A sample (plaintiff's exhibit 1) is representative of all of the items in question, except as to size. The article is the smallest of the three sizes that were imported. It is shaped like a half heart so that if laid on a flat surface the upper part would be raised above the surface as though a silver heart were split down the side. It measures about 1 inch overall, and seven-eighths of an inch at its widest part.

The plaintiff corporation is an importer and a manufacturer of costume jewelry and handles everything associated with such merchandise, including stampings, galleries, and mesh.

Pincus Jacobs, employed as a foreign buyer by the importing corporation, was plaintiff's only witness. During the course of his 21

years' employment, he observed the manufacture of merchandise like that under consideration. In this connection, he stated that the items in question are produced on a stamping machine, or power press equipped with male and female dies, that punches out the imported heart-shaped pieces of metal. He admitted that the manufacturing operation is a stamping process but insisted that the present articles are not stampings.

The witness referred to the merchandise in question as unfinished jewelry. He stated that from an inspection of the items he recognized them, by their shape and size, as "the beginning of a brooch or an earring." All of the merchandise under consideration was finished by plaintiff into either earrings or brooches, articles of personal adornment worn by women. To make a heart earring from the metal piece (exhibit 1), the back thereof is fitted with an earring wire, consisting of a plunger with a knob and button at the end (plaintiff's illustrative exhibit 2). The larger imported items (approximately 1½ inches overall and 2 inches at the widest point) are material for the manufacture of brooches, which, in their completed condition, are fitted with a bar pin and a safety catch (illustrative exhibit 3). Both of the finished articles, the earring and the brooch, are polished or plated, giving them a high luster, and each of them is sold by plaintiff as jewelry.

The witness further testified that stampings are "only a small part of the finished item"; that they require much labor and additional parts to become a finished article; and that in the course of manufacture into a finished product, the form and condition of a stamping are changed. After stating that the merchandise in question is not a stamping, he gave his reason therefor as follows: "That has a definite purpose to it. As I said before, by attaching the earring wire to it, it will definitely be a finished earring, and by attaching the bar pin to the exhibit, it will be a finished brooch, whereas a stamping is quite another thing for the simple reason that it would require much more additional parts, or much more labor involved to get the finished and completed item."

The different fittings or components that have been added to the imported merchandise to produce the finished articles were characterized by the witness as "findings." His testimony, explaining the term, is as follows (R. 32):

JUDGE MOLLISON: Are findings something which are in the general sense trimmings from other larger pieces of material?

THE WITNESS: They are made out of smaller pieces. I would say that findings are attached to stampings and beads, etc. We create something from a stamping by the use of findings and beads.

JUDGE MOLLISON: You create a stamping by the use of a finding?

THE WITNESS: No, we create a finished article by combining findings, stampings and beads.

The witness further stated that "there isn't much difference" between a "finding" and a "stamping."

Defendant's witness is the president of Accessocraft Products Corp., an importer and a manufacturer of costume jewelry. The witness has been associated with his company for 16 years and has been connected with the industry for 26 years. He defined a "stamping" as "any piece of metal that is struck from either a machine or by hand by an instrument which will cut it and shape it, or both," and then identified the items in question as stampings. The witness stated that he had never seen stampings exactly like those under consideration. His testimony relates to similar domestic merchandise in the design or shape of a heart, which he observed being used for various purposes, particularly as ornaments on compacts, cigarette cases, and bracelets, and also as a zipper puller on ladies' pocketbooks.

Counsel for plaintiff, in his brief, argues that "the imported items are unfinished jewelry because they have been so far processed or advanced toward their intended use that in their condition as imported they are no longer mere material but are unfinished articles of a definite size, shape and character." To support the contention, reference is made to the decision in the case of *United States* v. *Cohn & Rosenberg, Inc.*, 19 C. C. P. A. (Customs) 137, T. D. 45259. In that case, the merchandise consisted of articles of bone, carved into shapes of small roses. The portion representing the stem was shaped and designed for the purpose of being pierced for some kind of attachment. The articles were "used only, and suitable for use only, when drilled and fitted with pins or hangers, as brooches, pendants, and earrings." The collector classified the merchandise as unfinished jewelry, and the importer sought classification as manufactures of bone. In sustaining the collector's classification, the court said:

> In the case at bar the carved bone rose is a complete article, ready to wear, except for some means of attaching the same to the person or clothing of the wearer. It is finished with that exception, and the statute made specific reference to "jewelry * * * finished or unfinished." A brooch, an earring or a pendant of the material at bar, finished, would clearly be jewelry.

The *Cohn & Rosenberg, Inc.*, case is readily distinguishable from the present one. First of all, the issue there was materially different from that now before us. The cited case in no way related to the provision for "stampings," which is the primary consideration herein. Furthermore, the merchandise involved in the *Cohn & Rosenberg, Inc.*, case was entirely unlike the items in question. There, the carved bone had been processed to such an extent that the court recognized the merchandise to have the "characteristics of a manufactured article" and dedicated to use as jewelry. That is not true of the items in question. The present merchandise, in its imported condition, consists of dull, heart-shaped pieces of metal produced by a stamping

process. They are stampings. Substantial work, including some sort of a plating process, must be applied to the imported merchandise, and essential fittings, called "findings," must be added thereto before any of these heart-shaped pieces of metal become a finished article of commerce. Although plaintiff used all of the items in question in the manufacture of earrings or brooches, the witness stated that "they are commercially fit for other purposes" (R. 12). There is nothing in the appearance of the imported items to indicate that they have been dedicated for use in the manufacture of brooches or earrings. The sample (exhibit 1) consists of a rough, dull piece of metal in the shape of a heart.

Plaintiff's testimony that the present merchandise is made on a stamping machine using cutting and punching dies, and that the operation is a stamping process, brings the merchandise in question within the common meaning of a "stamping," which is defined in Webster's New International Dictionary (second edition) as "something stamped out of another piece, as by machinery, or pressed or drawn into a definite shape from a blank." The Encyclopaedia Britannica (volume 18, 14th edition) contains the following information pertinent to the character of the present merchandise:

**pressed metal,** a broad term which includes that class of merchandise made by the process of bending, shaping and forming sheets, strips, plates or bars of metal in either hydraulic or mechanically-driven presses. Steel so treated is referred to as *"pressed steel"* or *"stampings."* * * *

\* \* \* \* \* \*

The equipment used for the manufacture of pressed steel carries the general term of *presses.* There are two general classes known as hydraulic and mechanically-driven. The majority, however, are belt-driven *power presses* of varying size. The press furnishes the power and the means of holding the "tools" or punches and dies that do the actual forming of the metal. *These "tools" consist of an upper or male section, which is known as a punch, and the lower or female section, which is known as a die.* A piece of steel is held over the lower section (the die) and the upper section (the punch) is brought down on this by the power press, thus cold forming the steel into the desired shape. * * * [Italics supplied.]

Our conclusion that the merchandise in question consists of stampings of metal brings to attention plaintiff's proposition that the provision for unfinished jewelry is more specific than the one for stampings, and that, therefore, the items in question should be classified as claimed. This contention, however, is without merit. The competing provisions, formulating the issue before us, do not present a question of relative specificity. The provision for unfinished jewelry, under which plaintiff seeks classification, is applicable to such articles as have been so far processed that they are definitely committed to a particular article or class of articles of jewelry. (*United States* v. *Cartier (Inc.); Cartier (Inc.)* v. *United States,* 15 Ct. Cust. Appls. 334, T. D. 42493; *United States* v. *Cohn & Rosenberg, Inc., supra.*) On the other hand, the provision for "Stampings * * * of metal" in

paragraph 1527 (d), adopted by the collector, contemplates manufacturing *materials* susceptible of use in the production of a wide variety of articles embraced within paragraph 1527 of the Tariff Act of 1930. A brief reference to the legislative history of the provision for metal stampings is pertinent at this point.

The Tariff Act of 1909 (paragraph 448) was the earliest legislation to contain the provision for "all stampings and materials of metal * * * suitable for use in the manufacture of any of the foregoing articles" (having reference to those covered by paragraph 448). The provision was enacted following consideration of information supplied at hearings before the Committee on Ways and Means (Hearings before Committee on Ways and Means, House of Representatives, Sixtieth Congress, volume 8, pp. 8376, *et seq.*), when attention was directed to the need for tariff legislation to specifically cover stampings and materials of metal used in the fabrication of cheap jewelry. That representation can be directly applied to the merchandise under consideration. The imported material, being stampings, is used in the fabrication of articles, including jewelry. While the record makes no reference to the cost of the finished products, an examination of the earrings and the brooches (illustrative exhibits 2 and 3, respectively) indicates that they are inexpensive items.

Later, in the Tariff Act of 1913 (paragraph 356), the provision for stampings and materials of metal was enlarged, or broadened in scope, to cover such merchandise "whether or not * * * separate or in strips or sheets." That modification has no significance herein. The importance of this review of legislative history to the present issue is the fact that, so far as the general provision for metal stampings is concerned, the language employed in the original provision (paragraph 448 of the Tariff Act of 1909) was reenacted without change in all of the subsequent tariff acts, i. e., paragraph 356 of the Tariff Act of 1913, paragraph 1428 of the Tariff Act of 1922, and paragraph 1527 (d) of the Tariff Act of 1930, the only variation being in the rate of duty applied. Such consistent action by the legislators may be accepted as indicative of a congressional intent to adhere to the original purpose for enacting the tariff provision.

The foregoing legislative history was a consideration in the case of *Wm. E. Flory & Co.* v. *United States*, 45 Treas. Dec. 244, T. D. 40042, which held "small ornamental articles stamped or pressed out of sheet steel" and made up in the form of buckles and buttons for use in the manufacture of brass buckles and brass ornaments on dresses to be properly classifiable under the provision in paragraph 1428 of the Tariff Act of 1922 for metal stampings suitable for use in any of the articles covered by that paragraph, which included buckles, dress buttons, and like articles.

On the basis of the record before us, considered in the light of legislative history, as outlined, as well as judicial interpretation of the

cases hereinabove cited, we find that the imported items are not unfinished articles of jewelry. They are stampings of metal suitable for use in the manufacture of articles designed to be worn on or about the person as incidental articles of personal comfort or adornment. Accordingly, we hold the merchandise in question to be classifiable as metal stampings of the class or kind provided for in paragraph 1527 (d), as assessed by the collector.

The protest is overruled and judgment will be rendered accordingly.